**Dated: September 24, 2012**

**The following is ORDERED:**



*Tom R. Cornish*

TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

In Re:

**NITA SUE HAMBRICK**                    Case No. 09-81378-TRC
                                         Chapter 13
          Debtor.


**NITA SUE HAMBRICK**

          Plaintiff,

v.                                       Adv. No. 11-8001-TRC

**PERCEPTUAL DEVELOPMENT
CORPORATION, ROBERT IRLEN,
HELEN IRLEN, AND BONNIE N. FINE,**

          Defendants.

### <u>OPINION</u>

On June 25, 2012, this matter came on for trial on the Plaintiff's Amended Complaint

seeking damages for violations of the discharge injunction set forth in 11 U.S.C. § 524(a). At the

request and by agreement of the parties, trial of this case was combined with trial of Case No. 11-8002, which was brought by Plaintiff Selby against the same Defendants. Appearances were entered by Daryl Roberts for Plaintiffs, and Jerome Sepkowitz and Pete Serrata for Defendants. The Court denied Defendants' Motion for a Directed Verdict. A ruling on Defendants' Motion for Sanctions was reserved until after trial. Upon the submission of proposed findings of fact and conclusions of law, the Court took all pending matters in both cases under advisement. Based upon the facts of this case and applicable law, the Court finds in favor of Plaintiffs against Defendants. The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

Plaintiff Nita Sue Hambrick, and Plaintiff in related Case No. 11-8002, Barbara Selby (collectively "Plaintiffs"), were sued by Defendant Perceptual Development Corporation dba Irlen Institute ("PDC") in California state court in 2008 to collect damages regarding a contract between the parties. In 2009, Plaintiffs filed their bankruptcy cases, and generally speaking, the California state court litigation was stayed. PDC filed adversary complaints alleging nondischargeability of the debts it claimed pursuant to their contract. PDC subsequently voluntarily dismissed its adversary proceedings. Plaintiffs received their discharges, and both bankruptcy cases were closed in 2010. In early 2011, PDC resumed the California litigation it had filed against Plaintiffs prepetition, but allegedly only with respect to damages stemming from their postpetition conduct. Plaintiffs then filed these adversary proceedings claiming violations of the automatic stay and discharge injunction.

## FINDINGS OF FACT

These parties have a long and tortuous relationship. Plaintiffs Hambrick and Selby operated

a business in Ardmore, Oklahoma, and entered into a contractual relationship in 1998 or 1999 with Defendant PDC.[1]  Plaintiffs were granted a license to use a method of diagnosing difficulties in processing visual information. This contract included a nondisclosure/noncompetition clause, and it also provided that disputes would be resolved by arbitration or by a particular California court. Years later, on February 11, 2008, PDC filed a lawsuit in the Superior Court of California, Los Angeles County South Division, against Hambrick and  Selby as individuals, and against TLC Assessment Center, Inc., an Oklahoma corporation, Kathy Wyrick, another individual, and "Does 1 to 100, inclusive" ("California Case").  The 2008 Complaint included twelve causes of action against Hambrick and Selby, TLC, and Does 1 to 25.[2]  It was based upon the 1998-1999 contract, and upon PDC's patent that expired in 2007.  Damages sought from all defendants were restitution, lost royalties, lost profits, lost lens orders, lost prospective business, injunctive relief, exemplary damages, compensatory damages, attorneys fees, and return of all PDC client files.  According to the Case Summary from the California Case, default was entered against Hambrick and Selby in July of 2008.[3]

Shortly after the California Case was filed, Hambrick and Selby filed declaratory judgment

---

[1]The individual Defendants in these adversaries are principals of PDC.  Defendant Helen Irlen is President of PDC.  Defendant Robert Irlen is the Chief Financial Officer of PDC and one of its attorneys, licensed in the State of California. Defendant Bonnie N. Fine is also an attorney for PDC, licensed in the State of California. Both Ms. Fine and Mr. Irlen appeared at trial.  Ms. Irlen waived her right to appear.

[2]The causes of action were misappropriation of trade secrets, misappropriation of trade secrets under the Uniform Trade Secrets Act, breach of contract, breach of confidence, civil conspiracy, breach of fiduciary duty, fraud, interference with prospective business advantage, common counts (accounting), trade libel, unjust enrichment, and exemplary damages.  Ms. Wyrick was charged with all but breach of fiduciary duty.

[3]Plaintiffs' Trial Exhibit 38.

actions against Defendants in the District Court of Carter County, Oklahoma. Those lawsuits were stayed pending resolution of the California Case. Hambrick filed her Chapter 13 bankruptcy and Selby filed her Chapter 7 bankruptcy on August 17, 2009. A Suggestion of Bankruptcy was filed in the California Case on August 20, 2009. PDC and the California Court were aware that both Hambrick and Selby had filed bankruptcy in Oklahoma.

PDC filed a Proof of Claim in Hambrick's bankruptcy for $1,937,993.84. This amount consisted of $129,524.25 for underpayment of royalties from 2002 - 2005, $226,528.78 for lost revenues from 2006 - 2008, $200,000 for damage to reputation, $57,969.68 for legal fees through July 30, 2009, and $1,453,495.38 for punitive damages (treble actuals).[4] The Claim also listed specific injunctive relief requested. PDC filed adversary proceedings under 11 U.S.C. § 523(a)(2), (4) and (6) against Hambrick and Selby.[5] Hambrick and Selby filed counterclaims against PDC seeking declaratory judgments regarding certain provisions of their contract with PDC, and injunctive relief. Eventually, PDC decided to dismiss its adversary proceedings against Hambrick and Selby, and withdraw its Proof of Claim against Hambrick. Hambrick and Selby did not object, but desired to continue with their counterclaims. This Court then determined that it should abstain from deciding the counterclaims based upon state law, and granted PDC's motions to dismiss the adversaries.[6] After Hambrick's Chapter 13 Plan was confirmed and completed, the stay was lifted

---

[4]When added together, the amounts listed on the Proof of Claim do not equal the total amount of the claim.

[5]PDC v. Selby, Case No. 09-8045; PDC v. Hambrick, Case No. 09-8043.

[6]*Docket Entry 69,* PDC v. Hambrick, 09-8043; *Docket Entry 69*, PDC v. Selby, 09-8045.

to allow PDC to continue its state court lawsuit in accordance with this Court's Order of Abstention.[7] Selby received her discharge on December 2, 2009, and her case was closed on July 7, 2010. Hambrick received her discharge on September 10, 2010. Her case was closed on December 27, 2010.

The primary participants in the California Case are Defendants Fine and Robert Irlen, and they each testified before this Court regarding those proceedings. Irlen testified that he is Chief Financial Officer and corporate counsel of PDC. He was admitted to the California Bar in 1976, but has never really practiced law. He was aware that Plaintiffs filed bankruptcy in Oklahoma and was involved in the bankruptcies and earlier adversary cases. Upon advice of counsel, he decided to dismiss those adversary cases, and proceed against Plaintiffs in California after the bankruptcies were completed. He appeared at the Status Conferences held in the California Case on behalf of PDC. He also calculated the amount of damages sought by PDC against Hambrick and Selby and their co-defendants. He stated that it was always his intent and the intent of PDC to take judgment against Hambrick and Selby in the California Case.

Defendant Fine is PDC's attorney in California. She testified that during and after the bankruptcy proceedings, various status conferences were held in the California Case.[8] Notices of the status conferences were prepared, filed and served by her. These were referred to as "Notice of Ruling," and included the appearances, actions taken at the conference, and orders to appear at future

---

[7]*Docket Entry 124*, Case No. 09-81378 Hambrick. Hambrick and Selby filed separate appeals of this Court's Order of Abstention and Dismissal and Order Lifting Stay with the District Court. The District Court affirmed the orders of this Court on January 10, 2011. *Docket Entry 102*, PDC v. Hambrick, Case No. 09-8043; *Docket Entry 101*, PDC v. Selby, Case No. 09-8045.

[8]Plaintiffs' Trial Exhibit 38; Defendants' Trial Exhibit A.

conferences.[9]  One particular notice issued after Plaintffs' bankruptcies were filed included a reminder to pay sanctions previously awarded by a certain deadline.[10]  In regard to future Status Conference dates, the notices included this language: "It is ordered that all parties appear at that time" or "All parties are ordered to attend."[11]  Fine testified that PDC was required to appear at these conferences to keep the California Court updated regarding the status of the bankruptcy cases, and that California procedure required that they complete a case in a year's time, citing Rule 3.723 of the California Rules of Court.[12]  Fine stated that she was aware that Plaintiffs had filed bankruptcy at the time she prepared, filed and served the notices of status conferences and orders to appear.  She said that the California Court ordered her to prepare and file the notices.  Fine also stated that California Court Rules prohibit "piecemeal defaults."  Thus, PDC was not allowed to take judgment against one defendant at a time, but had to wait until the bankruptcies were completed before it could take judgment against any of the defendants.

After discharges were entered in the bankruptcy cases, the California Court set another Status Conference for December 22, 2010.[13] With a looming deadline for filing an answer, on November

---

[9]*See e.g.*, Plaintiffs' Trial Exhibits 3, 4, 5, 8, 9, 10, 14.  Exhibit 10 also includes a directive that Defendants in the California Case file an answer to the Complaint within twenty days after November 15, 2010.

[10]Plaintiffs' Trial Exhibit 3.

[11]*See e.g.,* Plaintiffs' Trial Exhibit 8.

[12]Defendants' Trial Exhibit P.  The Rule states: The court on its own motion may order, or a party or parties may request, that an additional case management conference be held at any time.  A party should be required to appear at an additional conference only if an appearance is necessary for the effective management of the case.  In determining whether to hold an additional conference, the court must consider each case individually on its own merits.

[13]*See* Plaintiffs' Trial Exhibit 10.

27, 2010, Hambrick and Selby each executed a Special Entry of Appearance in the California Case.[14]
They stated that the allegations in the California case were the same as those made in the bankruptcy cases that had been dismissed by the Bankruptcy Court, that discharge had been entered, and that the bankruptcy cases continued to be litigated and were pending before the U.S. District Court for the Eastern District of Oklahoma.  They also cited 11 U.S.C. § 524, stating that the statute operated as an injunction against the continuation of any action to collect debts discharged in bankruptcy, and that PDC was in willful violation of § 524.  And, they alleged that PDC was in willful violation of the automatic stay of § 362, by its actions in obtaining court orders in the California Case during the pendency of the bankruptcy cases.  In response, Irlen filed a Declaration stating that PDC's actions against Hambrick and Selby had been dismissed without prejudice, that the automatic stay had been lifted, and that PDC had no intention of trying to collect debts that arose prior to bankruptcy.[15]

On December 22, 2010, a Case Management Conference was held in the California Case.[16]
The Court ordered PDC to file a request to enter default against Hambrick and Selby and their co-defendants by February 3, 2011, and set a show cause hearing for that day.[17]  As a result, Fine

---

[14]Plaintiffs' Trial Exhibit 11, Hambrick's Special Entry of Appearance; Plaintiffs' Trial Exhibit 12, Selby's Special Entry of Appearance (attached as Exhibit 2 to Declaration of Robert Irlen.)  Hambrick's Special Entry of Appearance is file-stamped December 1, 2010, by the California Court.  Selby's Special Entry of Appearance does not contain a file-stamp but presumably it was filed on or about December 1, 2010, since it was mailed the same day as Hambrick's.

[15]Plaintiffs' Trial Exhibit 12.

[16]Defendants' Trial Exhibit E.  This exhibit reflects a filing date of January 11, 2011, and a service date of January 5, 2011.

[17]Defendants' Proposed Findings of Fact and Conclusions of Law (Docket Entry 124) states that Ms. Fine was directed by the Superior Court to initiate default proceedings or dismiss the action against all defendants, not just Hambrick and Selby.  The Court has reviewed the trial

prepared a Request for Entry of Default and Court Judgment against TLC Assessment Center, Inc.,

Hambrick, and Selby, and served it on Plaintiffs on January 5, 2011, by first class mail, postage

prepaid.[18]  Fine then filed the Request in the California Case on January 11, 2011.[19]  After receiving

copies of the Request, Plaintiffs filed these adversary proceedings on January 11, 2011.

      The Request for Default and Judgment sought money damages on the prepetition Complaint

filed by PDC in the California Case on February 11, 2008.  The Request was a court form that

included a list of different categories of money damages.  Fine testified that the process for taking

default was to file the default form, then "prove up" the amount of damages by form or by

declaration and enter a judgment based upon the "prove up."  Once default is entered, parties may

not file an answer without first vacating the default.  This Request identified the following damages:

special damages of $127,176, general damages of $200,000, attorney fees of $50,000, and costs,

interest and "Demand of complaint" as "to be determined" or "TBD."  In the "Credits

Acknowledged" column, as to special and general damages only, Fine inserted  "Post Bankruptcy."

      Another Case Management Conference was held in the California Case on February 3, 2011.

According to Ms. Fine's Notice of Ruling from that Conference, the California Court entered

defaults as to Hambrick, Selby, and TLC Assessment Center, Inc.[20]  The Court also ordered PDC to

---

testimony and is unable to locate support for this statement in the record.

    [18]Defendants' Trial Exhibit G. Later, at the bottom of the form, in the  "For Court Use Only" box, the Deputy Clerk checked the box that stated "Default entered as requested on" and entered the date of "2-4-09."

    [19]Plaintiffs' Trial Exhibit 13, and Defendants' Trial Exhibit G.

    [20]Defendants' Trial Exhibit Q.  This Exhibit includes copies of Notices prepared by Ms. Fine regarding numerous Case Management Conferences that have been held in the California Case.  None bear file-stamps.  However, Plaintiffs' Trial Exhibit 38, a Case Summary of

file its default to prove up damages as to all defendants with a proposed judgment, and it set another status conference for March 15, 2011. The Court's Case Summary reflects that a conference was held March 15, 2011, and a show cause hearing for failure to file default judgments was continued.

On March 28, 2011, PDC filed an Amended Complaint[21] against Hambrick, Selby, and others, and caused summons to be issued to the defendants in the California Case.[22] Fine testified that this Amended Complaint was filed at the direction of the California Court, because it rejected declarations regarding damages submitted by PDC to that court in early March. Apparently, these declarations were submitted by Fine, Helen Irlen, and Jerry Sepkowitz.[23] These rejected declarations were not provided to this Court. Fine testified that once a declaration is rejected by the California Court, it is no longer available, but she did not explain why the declarations were not provided to this Court. Plaintiffs' counsel reported that he was unable to obtain copies of these documents as well as other documents from the California Court Clerk.

The Amended Complaint served on Hambrick and Selby[24] is virtually identical to the original 2008 Complaint filed before bankruptcy. The allegations and causes of action are the same as those in the original Complaint and are based upon the same conduct, the majority of which is alleged to have occurred prepetition. The same twelve causes of action are listed, as well as the same types of

---

documents filed, reflects that the Notice from the February 2011 hearing was filed February 14, 2011.

[21]Plaintiffs' Trial Exhibit 42.

[22]Plaintiffs' Trial Exhibit 18.

[23]Plaintiffs' Trial Exhibit 38.

[24]Plaintiffs' Trial Exhibits 28 and 30.

damages. The allegations and requested damages and relief in each cause of action were not modified to reflect that PDC's basis for relief against Hambrick and Selby related only to their postpetition conduct.

Several additions to the Amended Complaint seek not to limit the damages, fees, and costs sought, but to enlarge them. A paragraph was added to the breach of contract cause of action stating that its damages are set forth in the prayer and Statement of Damages, but the Statement of Damages referred to has not been provided to this Court. The additional paragraph also cites to the prepetition contract and states that all remedies available to PDC shall be cumulative as to Hambrick, Selby and TLC, and that should there be any legal action, the prevailing party shall be entitled to reasonable attorney fees and costs from the losing party. An additional demand was also added under the cause of action for fraud, seeking restitution and lost royalties, loss of revenues, damage to reputation, general damages and punitive damages.

The only change to the Amended Complaint that seeks to limit PDC's recovery against Plaintiffs to damages stemming from postpetition conduct is the concluding prayer for relief. The modified prayer purports to limit recovery for loss of revenues as to Hambrick and Selby for "post bankruptcy filing," and was revised to include a specific dollar amount of damages for restitution, loss of royalties, and damages to reputation as to Hambrick, Selby, Wyrick, and TLC. However, it also seeks loss of profits, loss of prospective business and general damages, exemplary and compensatory damages in an unspecified amount to be determined or proven.

Since filing of the Amended Complaint, PDC has modified the damages sought from Plaintiffs. In May of 2011, Irlen filed a Declaration regarding computation of damages,[25] and PDC

---

[25]Plaintiffs' Trial Exhibit 26.

filed a Statement of Damages.[26]  The Declaration filed by Irlen explains how he computed damages and states that he limited damages from Hambrick and Selby to the time period of September 1, 2009 to December 31, 2010.  He included attorney fees for work performed in the Oklahoma lawsuits filed prepetition, and for work performed in the bankruptcy cases. The Statement of Damages (Personal Injury or Wrongful Death) form filed by PDC seeks $250,000 in pain, suffering and inconvenience, $200,000 for damage to reputation, $127,176 for Loss of Revenues, $47,824 for Legal Fees, and $2,000,000 for punitive damages from Hambrick and from Selby.  These amounts differ from and are significantly greater than the amounts set forth in the first Request for Default and Entry of Judgment, and from the prayer in the Amended Complaint.

Damage requests against Plaintiffs were changed again when PDC filed another Request for Entry of Default and Court Judgment on August 10, 2011.[27]  This Request seeks special damages of $127,176, general damages of $450,000, and attorney fees of $14,813, for a total of $591,989 each from Hambrick and Selby.  There are no requests for punitive damages.

Fine testified that Mr. Irlen calculated the amount of damages requested by PDC, and that she assisted him in preparing the Declarations regarding the computation of damages.  Damages awarded by default judgment, she explained, are based upon a court formula, and have nothing to do with actual damages incurred by the party seeking default judgment.[28]  Later, she stated that attorney fees in a default judgment are calculated by a formula based upon the total amount of the

---

[26]Plaintiffs' Trial Exhibit 27.

[27]Plaintiffs' Trial Exhibits 35 and 36.

[28]The Court is unclear as to whether Fine misspoke on this point, but presumes that she meant to say that attorney fees were based upon a formula, rather than other damages.

judgment awarded, not upon the actual amount of attorney fees incurred. Therefore, she stated that any attorney fees awarded would not include fees incurred prior to bankruptcy.

As for damages for loss of reputation, and general damages that were requested by PDC in the forms submitted to the California Court, Fine stated that the amounts listed were presumed by her and were not based upon any hard numbers. She testified that in California, business entities are allowed to recover general damages, or pain and suffering. However, she stated that she deleted the request for general damages, or pain and suffering, from the Amended Complaint.[29] When questioned as to why PDC, a corporation, would be entitled to recover general damages for pain, suffering, and inconvenience, Fine replied that she could not explain it other than it was just the way they did things in that court.[30] She further explained that she listed damages for pain and suffering on the Statement of Damages (Personal Injury or Wrongful Death) forms because there was not an appropriate category for general damages. She chose to list those on the line titled "Pain, suffering, and inconvenience," even though there was room provided on the form to request "other" damages that did not fit into the categories listed.[31] However, the Statement of Damages form does include additional space to add damages that do not fit into a category already listed on the form. In fact, Fine made use of the additional space on the form to request money damages for "damage to reputation." It is unclear why she did not also use this additional space to request general damages

_____

[29]*See* Plaintiffs' Trial Exhibit 42. The Amended Complaint does include requests for general damages throughout the Complaint, but does not contain a specific dollar amount.

[30]Plaintiffs' Trial Exhibits 27A and 27B. These Statements of Damages were prepared and served by Fine on April 6, 2011, and were filed with the California Court on May 24, 2011.

[31]There is a specific line item for General Damages on the Request for Entry of Default and Judgment Form, but not on the Statement of Damages (Personal Injury or Wrongful Death) form.

instead of choosing to list them in the pain and suffering category.[32]  She stated that damages for pain and suffering were not ultimately requested by PDC.  However, she did admit that a Statement of Damages that included amounts for damages for pain and suffering and punitive damages was submitted to the California Court and served on Hambrick and Selby.

 According to Fine, a  request or "prove-up" has been approved by the California Court but an actual judgment has not been entered because that court is awaiting a ruling from this Court.  This Court was not informed as to what damage amounts were approved nor what documents those amounts are based upon.  When asked whether she knew the amount of damages in the "prove-up" that had been approved against Hambrick and Selby, Fine stated that the amounts were "fairly accurately described" in the Amended Complaint, but she did not reveal the dollar amounts.  She was uncertain whether the California Court changed any of the damage amounts PDC requested, but seemed to suggest that changes were made.  She believed that the California Court was not inclined to award punitive damages against Hambrick or Selby. Therefore, punitive damages were not requested in the Amended Complaint, she said.[33]  Similarly, Irlen did not reveal the amount of damages included in the declaration or prove-up he prepared, nor did he reveal what was approved by the California Court.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(1).

---

[32]*See* Plaintiffs' Trial Exhibts 27A and 27B, attached as an appendix to this Opinion.

[33]*See* Plaintiffs' Trial Exhibit 42.  Contrary to Fine's testimony, the Amended Complaint does include requests for punitive damages and exemplary damages for at least nine of the identified causes of action, but does not state a specific dollar amount.

**Violation of the Discharge Injunction**

Plaintiffs originally brought these adversaries for violations of the automatic stay in § 362(a) and the discharge injunction in § 524. At trial, however, Plaintiffs withdrew their request for relief under § 362(a) and proceeded only under § 524.

The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt.[34] The discharge injunction arises by operation of law upon entry of the discharge. "It is an equitable remedy precluding the creditor, on pain of contempt from taking *any* actions to enforce the discharged debt."[35] "The purpose of § 524 is to afford a debtor a 'fresh start' by ensuring that a debtor will not be pressured in any way to repay a debt after it has been discharged."[36] A creditor violates the discharge injunction when it (1) has notice of the debtor's discharge, (2) intends the actions that constitute the violation, and (3) acts in a way that improperly coerces or harasses the debtor.[37] A creditor who violates the discharge injunction is in contempt of this Court, and civil sanctions may be imposed.[38] A court may remedy

---

[34] 11 U.S.C. § 524(a)(1), (2); *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447, 124 S. Ct. 1905, 1910 (2004), citing 3 W. Norton, Bankruptcy Law and Practice 2d § 48:1, p. 48-3 (1998).

[35] *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008), *aff'd* 559 U.S. – , 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).

[36] *In re Martin*, 2012 WL 907090, *5 (6th Cir. BAP ) (quoting *Paglia v. Sky Bank (In re Paglia)*, 302 B.R. 162, 166 (Bankr. W.D. Pa. 2003)).

[37] *Ammons v. Eddy Fed. Credit Union (In re Ammons)*, 2012 WL 1252621 (Bankr. D.N.M.)(citations omitted). *See also In re Collins*, 474 B.R. 317 (Bankr. D. Me. 2012).

[38] *In re Schott*, 282 B.R. 1 (10th Cir. BAP 2002).

a violation of the discharge injunction by awarding damages to the injured debtor.[39]

In this case, the first two necessary elements of the Plaintiffs' actions for violation of the discharge – notice of the discharge and subsequent intentional conduct-- were essentially admitted by Defendants: they received notice of the bankruptcies, participated in them, and intended to continue with the entry of judgments against Hambrick and Selby in the state court actions filed prior to the bankruptcies. It is irrelevant that Defendants believed their activity was done in good faith.[40] The essential issues before this Court are whether the Defendants' actions taken in the California case postpetition were designed to collect a prepetition debt that has been discharged, and to coerce or harass the debtors. Defendants insist that they are simply seeking a default judgment against Plaintiffs for postpetition conduct in violation of the 1999 contract. The Court agrees that Defendants are not barred from seeking to collect for postpetition debt. However, in this case it is difficult to distinguish pre and postpetition debt when reviewing the evidence. The Court will consider the various Requests for Entry of Default and Court Judgments filed by the Defendants in the California Court, compare Defendants' original state court Complaint with the Amended Complaint it filed after discharge, and examine the Defendants' actions during and after the bankruptcy cases.

The Court begins by reviewing the Requests for Entry of Default and Court Judgment and Statement of Damages submitted by Defendants to the California Court at least four different times

---

[39]*Ammons*, 2012 WL 1252621 at *7.

[40]*See Distad v. United States (In re Distad)*, 2009 WL 1324037, *6 (Bankr. D. Utah 2009). *See also Johnson v. Johnson (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007) (cited by Defendants, wherein the 10th Circuit held that the standard of proof for willful violations of the automatic stay is a preponderance of the evidence, and that no specific intent is required.)

in less than eight months – January, March, May, and August of 2011– in an effort to have it enter a judgment against Hambrick and Selby. The first Request for Entry of Default and Court Judgment was mailed to Hambrick and Selby on January 5, 2011, and filed of record in California on January 11, 2011.[41] This document recites that the requested judgment is based upon the prepetition complaint which sought damages for prepetition conduct. While PDC did insert the phrase "Post Bankruptcy" into the "Credits acknowledged" column for two of the requested damages categories, the meaning of that phrase is not readily apparent. PDC witnesses testified that the requested amounts for special and general damages were limited to postpetition damages. However, the dollar amounts are similar to those in PDC's Proof of Claim. The Proof of Claim lists damages for three years of royalties as $129,524.25, two years of lost revenues of $226,528.78, and damages to reputation of $200,000. The Request for Default and Judgment lists "Special damages" of $127,176, and "General damages" of $ 200,000, purportedly incurred since August of 2009 when bankruptcy was filed, which is for a shorter period of time than that represented by the prepetition amounts. Further, the requested damages for "Demand of complaint" do not include a dollar amount, but states that this amount will be determined. There is no notation limiting the requested attorney fees to postpetition. Therefore, this Request appears to be a continuation of the 2008 lawsuit, with at least some of the requested damages arising prepetition.

Apparently, the California Court was concerned that the Request for Entry of Default and Court Judgment may have included claims for debts that had been discharged. Fine testified that the California Court ordered PDC to file an amended complaint because the court rejected a declaration that was submitted to the court on behalf of PDC. The Case Summary reflects that on March 10,

---

[41]Plaintiffs' Trial Exhibit 13 and Defendants' Trial Exhibit G.

2011, a Declaration of Bonnie Fine and Jerry Sepkowitz in support of Default Judgment, and a Declaration of Helen Irlen for Default Prove were filed by Fine. These documents were not presented to this Court, and Hambrick and Selby's counsel represented that he had been unable to obtain some of the documents listed in the Case Summary. Fine explained that if a Declaration was rejected by the court, it could not be viewed. Therefore, this Court has no way of knowing what damages were sought.

After these adversaries were filed alleging violation of the discharge injunction, PDC continued to pursue the entry of judgments against Hambrick and Selby. The Statement of Damages and Request for Entry of Default and Judgment filed in May of 2011, which cited the Amended Complaint of March 2011, included more damages than were sought in January of 2011.[42] Punitive damages of $2,000,000 each were added, as were damages for pain and suffering. Fine testified that these were not sought from the California Court because the judge indicated she would not allow them, and that they were not sought after the Amended Complaint was filed. Clearly, that was not the case. In August of 2011, Defendants renewed their request for general damages of $450,000, but punitive damages were not included.[43] Even with this modification, the amount requested was over $200,000 more than the January 2011 Request. Neither Fine nor Irlen could tell this Court what type and amount of damages have recently been approved by the California Court.

The Court next looks to the Amended Complaint to determine whether Defendants were seeking prepetition, discharged debts from Hambrick and Selby. The Amended Complaint, filed in March of 2011, is virtually identical to the original Complaint filed in February of 2008. The

---

[42]Plaintiffs' Trial Exhibits 21, 22, and 27.

[43]Plaintiffs' Trial Exhibits 35 and 36.

Court's findings of fact recite the numerous similarities and few differences between the two complaints. The damages sought in the Amended Complaint, though limited in some manner, are based upon the same underlying conduct that formed the basis for PDC's prepetition damage claims, proof of claim filed in bankruptcy, and § 523(a) adversary complaints. The damages sought are virtually unlimited in time. Although the testimony indicated that an amended complaint was requested by the California Court to reflect that some debts had been discharged, the Amended Complaint fails to limit the requested relief as to all monetary damages to postpetition activity. The Amended Complaint could have been drafted so as to make it absolutely clear that damages as to Plaintiffs were limited to postpetition actions and debts. Instead, it appears to have been drafted to allow Defendants as much flexibility as possible with which to structure any type of damage claim and remedy for any time period they wish to pursue. The Amended Complaint gives this Court little assurance that Defendants are not attempting to collect discharged debts from Hambrick and Selby. In fact, the additional language regarding cumulative damages and attorney fees can be interpreted as expanding or at least bolstering the damages originally sought.

The Court next reviews Defendants' actions both during and after the bankruptcies. Most of the documents filed in the case regarding hearings, orders to show cause, and continuances were prepared by Defendant Fine. She testified that she prepared them at the direction of the California Court. Although testifying that they were required to hold status conferences throughout the bankruptcies, the California Court Rule cited by Defendants gives much leeway to a court to determine whether such conferences are held. And, the notices of the conferences, prepared by Fine, included orders to attend the conferences. These notices could easily have been drafted to exclude attendance for Hambrick and Selby, or to otherwise make clear that the bankruptcy stay was in place

and the California Court was not proceeding against them. Instead, such notices contributed to a feeling of harassment and intimidation of Hambrick and Selby.

The same is true of the continual requests for entry of default and judgment with varying types of damages and amounts. The amounts requested were similar to the debts listed in PDC's Proof of Claim. In some cases, the amounts Defendants requested for allegedly postpetition conduct were larger than the original amounts requested in the Proof of Claim that covered a longer period of time. Irlen testified that he only computed postpetition damages for a sixteen month period of time. The Proof of Claim form included damages for a three year period and a two year period. Damage amounts for strictly postpetition damages should have been less than that sought for prepetition debt, not more. Punitive damages requested postpetition were more than in the Proof of Claim. Underpayment of royalties sought for a three year period prepetition was only slightly more than the figure computed and requested for the sixteen month postpetition period. Defendant Irlen's Affidavit filed on May 24, 2011, states that the damages requested were based upon prepetition conduct and calculations. He explained that he did this because Hambrick and Selby failed to appear and defend themselves in the California case. He also stated that he sought to recover attorney's fees and costs incurred in the Oklahoma state court action, the California case, and in the bankruptcy case to protect its breach of contract claims. These damages were for prepetition, discharged debt.

Fine testified that Defendants are seeking money damages against Hambrick and Selby on the theory that they are partners and possible beneficiaries as officers of TLC Corp., and may be receiving remuneration from use of proprietary information of PDC. Irlen testified that PDC seeks an order prohibiting Hambrick and Selby from using the license for lens filters and protecting PDC's business model and proprietary information. Defendants state that the only claims they are

attempting to assert are based upon postpetition conduct. Hambrick and Selby testified, however, that they have not worked in their business since their bankruptcies were filed in 2009. The Court was presented with conflicting evidence regarding postpetition operations of TLC Assessment Center. It is uncertain what, if any, interest Hambrick and Selby may have in TLC and what, if any, liability or responsibility they might have under the prepetition agreement for postpetition actions.

Finally, this Court observed Defendants and assessed their demeanor and credibility while they explained the actions taken in the California Case. The Court finds that much of Irlen's and Fine's testimony was not credible. Irlen and Fine have been heavily involved in these cases for a number of years. They are both highly educated and experienced attorneys and business persons. They prepared the documents that were submitted to the California Court and attended the hearings. They testified that they only intended to pursue claims for postpetition conduct. Although they stated that they deleted requests for prepetition damages and attorney fees, and for any punitive damages, and pain and suffering from the Amended Complaint and subsequent prove-ups, that was not always the case. The Amended Complaint includes broad claims for several types of damages that are not limited to postpetition conduct of Hambrick and Selby. The Statements of Damages filed in May of 2011 include punitive damages of $2,000,000, and $250,000 for pain and suffering. These amounts were added after Hambrick and Selby filed these adversaries for violation of the discharge injunction. Fine and Irlen appeared evasive when asked to identify the damage amounts the California Court has approved. This leaves the Court with the impression that prepetition damages, and other damages are included or hidden within the new amounts PDC requested, and which have been approved by the California Court.

The Court also observed Hambrick and Selby and assessed their demeanor and credibility.

The Court believes their testimony that they were greatly distressed and intimidated by the frequent notices of activities that occurred in the California Case during and after their bankruptcy cases. They appeared fearful of and confused by Defendants' actions, and believed that Defendants were attempting to collect discharged debts and would not rest in their attempts to collect those debts.

Based on the evidence presented, this Court concludes it is reasonable to believe that Defendants' actions during the bankruptcies and these adversaries were designed to harass, intimidate, and coerce Hambrick and Selby, and that at least some if not all of the damages they seek are based upon prepetition conduct and debts that have been discharged. The shifting dollar amounts and requests for punitive damages, the virtually identical and open-ended allegations in the pre- and postpetition complaints, and the unwillingness to divulge information regarding current amounts PDC requested that were approved by the California Court provide a sufficient basis for this Court to conclude that the judgment PDC is seeking to have entered is at least in part for discharged debts. Further, PDC's actions against Hambrick, Selby and their co-defendants in the California Case is based upon a long-expired contract and patent. Finally, there is evidence to support the conclusion that Defendants' continued and repeated post discharge actions caused significant distress to Hambrick and Selby.

The Court makes no findings or conclusions regarding the legitimacy of the claims made in the California lawsuit. This Court is not in the position nor does it wish to oversee the conduct of the California Case.[44] However, to the extent that PDC's California lawsuit is based upon prepetition conduct, such claims arose prepetition and have thus been discharged in Plaintiffs' bankruptcy cases, and it is this Court's duty to enforce its discharge orders. Any attempt by PDC

---

[44]*See Paul v. Iglehart* (*In re Paul*), 534 F.3d 1303 (10th Cir. 2008).

to collect, revive or coerce payment of discharged claims violates the discharge injunction, and subjects them to a finding of civil contempt, in accordance with this Court's powers under § 105(a). Such conduct also warrants an order from this Court permanently enjoining Defendants from taking any further action against Hambrick and Selby designed to collect, recover or offset any discharged debt as a personal liability.

This Court may issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code.[45] Compensatory damages may be awarded as a sanction for civil contempt to compel compliance with this Court's order and to compensate the Plaintiffs for losses sustained.[46] At trial, Plaintiffs' counsel represented that neither Hambrick nor Selby seek to recover damages other than their attorney fees and costs for prosecuting this action. Therefore, this Court finds that civil sanctions should be imposed against Defendants in the form of reimbursement of Hambrick's and Selby's reasonable attorney fees and costs incurred in bringing these adversary cases. Hambrick and Selby may file an application for attorney fees and costs with supporting documentation on or before October 10, 2012, should they desire. Defendants may file a response to that application.

**Defendants' Motions for Sanctions**

Defendants urged the Court to sanction Plaintiffs for filing inaccurate and misleading pleadings, specifically the reference in the Amended Adversary Complaints to the first Request for Entry of Default and Court Judgment.[47] The actual Request is attached as an exhibit to the Amended Adversary Complaints, therefore the Court finds no cause to enter sanctions as requested.

---

[45]11 U.S.C. § 105(1), 524(a).

[46]*In re Torres*, 367 B.R. 478 (Bankr. S.D.N.Y. 2007)(citations omitted).

[47]*Docket Entry 5*, 11-8001 Hambrick v. PDC et al., *Docket Entry 5*, Selby v. PDC et al.

Defendants also seek sanctions for what they characterize as inaccuracies in Plaintiffs' pleadings regarding the California proceedings. The Court finds that Plaintiffs have submitted evidence of the documents prepared by PDC and filed in the California Case, which reflect that hearings or conferences have been held by that court throughout the bankruptcy cases. The Court has already discussed that the notices could be construed as requiring these debtors to appear and participate, and that the notices could have been drafted so as to avoid any uncertainty regarding the intent and purpose of those hearings. Therefore, the Court finds no sanctionable conduct on the part of Plaintiffs.

Defendants also filed a Motion for Sanctions based upon their allegations that Plaintiffs failed to participate in good faith in a settlement conference.[48] This Judge has many years of experience as an attorney, settlement judge, and trial judge; yet, such a motion has never been presented. This Court never received any written communication from the Settlement Judge regarding the failure of any party to participate in good faith at the settlement conference. The Court cannot force a party to accept a settlement offer it does not wish to accept, nor to make counter-offers. The Court is also unable and unwilling to examine the parties and their counsel regarding their settlement negotiations or require them to explain and justify their decisions. Accordingly, Debtors' Motion for Sanctions is denied.

## **CONCLUSION**

For the reasons set forth above, the Court finds that Defendants willfully violated the discharge injunction by attempting to collect debts that were discharged in Hambrick's and Selby's

---

[48]*Docket Entry 62*, 11-8001 Hambrick v. PDC et al.; *Docket Entry 43*, 11-8002 Selby v. PDC et al.

bankruptcies. Defendants' actions violate § 524(a)(2) and constitute civil contempt of this Court. This Court therefore finds that Plaintiffs Nita Sue Hambrick and Barbara Jeanne Selby are entitled to recover their reasonable attorney's fees and expenses incurred herein. Their counsel may, on or before October 10, 2012, submit an application for attorney's fees and costs. This Court further finds that Defendants' Motions for Sanctions shall be denied.

A separate Order and Judgment consistent with this Opinion shall be entered simultaneously herewith.

###